UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 04-440-C

ROYAL SURPLUS LINES INSURANCE
COMPANY, as subrogee of
THE GARDENS-LOUISVILLE, L.P.,                                                    PLAINTIFF,

V.                           MEMORANDUM OPINION AND ORDER

WEIS BUILDERS, INC., ET AL,                                                       DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant Weis Builders' ("Weis") Motion for Summary Judgment (DE 23); the third-party defendant Quality Building Products of Louisville's ("QBP") Motion for Summary Judgment (DE 28); the third-party defendant Grinnell Fire Protection's ("Grinnell") Motion for Summary Judgment (DE 29); the plaintiff Royal Surplus Lines Insurance Company's ("Royal") oral Motion for Summary Judgment on the issue of the scope of the waiver provision; and Royal's Motion to Reconsider the court's January 11, 2006, order denying leave to amend the complaint (DE 45). The court, having reviewed the record and being otherwise sufficiently advised, will deny the defendant's and third-party defendants' (collectively, "defendants") motions, and grant the plaintiff's motions.

**Background**

In December 1999, The Gardens-Louisville, L.P., ("The Gardens") entered into a contract with Weis for the construction of two assisted-living facilities – Edenbrook of Louisville and Edenterrace of Louisville ("the buildings"). The

buildings were substantially completed and final payment was made no later than December 31, 2002. In January 2003, sprinkler pipes in each of the buildings froze and burst, causing substantial water damage to the buildings.

The plaintiff Royal Surplus Lines Insurance Co. ("Royal") provides property insurance to The Gardens. Royal reimbursed The Gardens in excess of $300,000.00 for the damage sustained to the buildings and brought this action as The Gardens' subrogee, stating claims for breach of contract, breach of warranty, and negligence against Weis. Weis filed third-party complaints against subcontractors QBP and Grinnell for indemnification, liability for which is contingent upon the success of Royal's claims against Weis. Weis, QBP, and Grinnell filed motions for summary judgment based on the "Waiver of Claims" clause contained in the Contract, which provides:

> Notwithstanding anything in this Agreement to the contrary, Owner and Contractor hereby waive and release each other from any and all right of recovery, claim, action, or cause of action against (a) each other, their subcontractors, agents, officers and employees and (b) the Architect and its consultants, contractors, agents, officers, and employees, for any loss or damage that may occur to the Project, improvements to the Project, or personal property within the Project by reason of fire or the elements, accident, or other casualty, regardless of whether the negligence or fault of the other party or their agents, officers, employees or contractors caused such loss, to the extent the same is insured against under insurance policies carried by the waiving party (or required to be carried by such party). Owner and Contractor shall obtain a waiver of subrogation from the respective insurance companies which have issued policies of insurance covering all risk of direct physical loss, and to have the insurance policies endorsed, if necessary, to prevent the invalidation of the insurance coverages by

> reason of the mutual waivers. The Contractor shall cause each contract with each Subcontractor to contain a similar waiver in favor of the Owner, Contractor, Architect, and their respective subcontractors, agents, consultants, officers and employees.

Weis/Gardens Contract, December 8, 1999 ("the Contract")[1], §11.2. The contract is based on an American Institute of Architects Standard Form of Agreement Between Owner and Contractor ("AIA-A111"), to which Weis and The Gardens made numerous changes to meet their needs. The Waiver of Claims provision contained in the Contract is not contained in AIA-A111; it was drafted and inserted by the parties. Weis and The Gardens also omitted certain standard provisions of AIA-A111 pertaining to property insurance, which provide:

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

AIA-A111, §11.4.5. Subparagraph 11.4.7, "Waivers of Subrogation," states that

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors

---

[1] There are separate contracts for the two buildings, but because the terms of the contracts are identical, the court will refer to only one contract.

> described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. . . . A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification. . . .

AIA-A111, §11.4.7.

Royal argues in response to the defendants' motions for summary judgment and in support of its own motion for summary judgment that the Waiver of Claims provision in the Contract, to the exclusion of sections 11.4.5 and 11.4.7 of AIA-A111, does not apply to incidents occurring after the substantial completion and final payment of the contract.

**The Motions for Summary Judgment**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56 (e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Pursuant to a choice-of-law provision in the Contract, this case is governed by Texas law. Contract, § 13.1. Texas law permits parties to waive subrogation rights. *See Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App. – San Antonio 2001). The extent of subrogation rights waived is determined by looking at the contract between the owner and the contractor. *Id.* If an insured releases a claim against the offending party prior to the loss, the insurer's subrogation rights are destroyed. *Id.* at 10.

The waiver provision in this case refers to "the Project, improvements to the Project, or personal property within the Project" ("the Project"). Contract, § 11.2. The clause releases either party from liability for losses to the Project to the extent that such loss is "insured against under insurance policies carried by the waiving party (or required to be carried by such party)." *Id.* Thus, if Royal's policy insured The Gardens against loss to the Project, *and* the water damage to the buildings constitutes a loss to the Project, then the claims against the defendants are barred by section 11.2 of the Contract. However, if the insurance policy did not apply to the Project *or* if the losses sustained were not to the Project, then the waiver does not bar Royal's right to subrogation. *See id.*

Royal contends that the waiver provision does not apply to protect Weis from liability for post-construction losses. Essentially, Royal construes the contract

5

as meaning that the Project existed only as long as the contract had not been substantially completed or finally paid.  The defendants maintain that the Project also encompasses the completed buildings, even after final payment.

The waiver-of-claims provision in the Contract is not ambiguous, and the court therefore limits its inquiry to the plain meaning of the terms included in the contract.  *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  The parties defined "The Project" as "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors."  Contract, § 1.1.4.  "Work" refers to "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations.  The Work may constitute the whole or a part of the Project."  Contract, § 1.1.3.  The parties also clarified that the Contract was intended to provide "all items necessary for the proper execution and completion of the Work by the Contractor," Contract, § 1.2.1, which Royal argues means that the Contract provisions do not apply to post-completion occurrences.  These terms are standard provisions of AIA-A111.

The Contract does not contain any reference to the parties' rights and obligations beyond the terms of the contract, and the court will not imply one.  At some point, "the Project" becomes "the buildings," and the terms of the construction contract, except to the extent otherwise specified, cease to bind the

6

parties. Here, once the contractor had performed and provided everything upon which the parties had agreed in the Contract ("the total construction") and payment was made, the Project was terminated.

A narrow interpretation of the subject of the waiver provision is consistent with the warranty provision contained in section 3.5.1 of the Contract. The Contract states that "Contractor's express warranties contained herein shall be in addition to any warranties, indemnities, claims, rights or remedies that Owner may have in the Contract Documents, at law, or in equity for defective Work or breach of the Contract Documents." Contract, §3.5.2. Implicit in this provision is the parties' understanding that there exist other claims beyond those based in warranty, which understanding would be inconsistent with an unlimited waiver of claims.

This result is also supported by relevant case law. The court in *Trinity* found that a waiver-of-subrogation provision was applicable to a claim arising out of a fire that occurred during the term of the construction contract. *Trinity*, 75 S.W.3d 6. The clause waived the owner's and contractor's rights "for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work...." *Id.* at 9. The *Trinity* court reasoned that whether the waiver applies in a particular case depends on the source of the insurance proceeds. *Id.* at 13. *Trinity* does not support the defendants' argument that waiver provisions are applicable to post-construction damage, however, because the loss in *Trinity* occurred while construction was

7

ongoing.

In another case, the same waiver provision as the one in *Trinity* was held to bar a negligence claim where water damage occurred, as in *Trinity*, during performance of the contract services on an existing building. *Walker Eng'g v. Bracebridge Corp.*, 102 S.W.3d 837 (Tex. App. - Dallas 2003). The insurer paid the owner for the damage out of a builder's risk insurance policy and out of a pre-existing property insurance policy. *Id.* Overruling the insurer's contention that the property insurance policy was not applicable to "the Work," and that it was therefore entitled to bring a subrogation claim under that policy, the court held that "[t]o the extent the property damage at issue was covered by [the plaintiff's] insurance, [the plaintiff] waived its right to sue [the contractor]." *Id.* at 844.

Both *Trinity* and *Walker* involved damage that occurred in the course of construction and, therefore, did not address whether the waiver clauses would apply to damage sustained after completion of construction and final payment. Both courts focused on the source of the insurance proceeds compensating the loss in determining that the waiver provision applied. Here, even if the insurance policy was applicable to the Project, the proceeds were actually applied to the buildings, because the Project no longer existed when the damage was incurred.

The court also notes that a narrow construction of the scope of the waiver is consistent with industry norms and public policy. Industry norms, reflected in AIA-A111, contemplate the use of express language to create especially broad waivers. The parties intentionally chose not to include AIA-A111 sections 11.4.5 and

8

11.4.7, which clearly extend the waiver beyond completion of the contract if property insurance is obtained on the completed Project, in the Contract.

AIA-A111 section 11.4.5 differentiates between "the Project" and "the completed Project." Weis and The Gardens used the AIA-A111 definition of "the Project." As indicated by the "Project"/"completed Project" distinction contained in AIA-A111 section 11.4.5, that term is limited to pre-completion, and nothing in the Contract supports the suggestion that the parties intended to apply a different meaning. Because "the Project," as defined in the Contract, is customarily understood to terminate upon completion, and because the parties failed to include an express post-completion waiver of claims, the court's narrow interpretation of the waiver clause comports with industry standards. The norm is tailored to serve the policy behind waivers of claims; waiver clauses are intended to avoid disruption caused by litigation, which is no longer a concern once the contract has been fulfilled. *See Trinity*, 75 S.W.3d at 12-13.

The determination of the meaning of the Contract terms is a matter of law for the court to decide. As a matter of law, the unambiguous meaning of the waiver-of-subrogation provision at section 11.2 of the Contract does not extend to post-completion claims. Therefore, the court will deny the defendants' motions for summary judgment and will grant the plaintiff's oral motion for summary judgment as to the scope of the waiver of subrogation.

**The Plaintiff's Motion to Reconsider**

In an order dated January 11, 2006, United States Magistrate Judge Dave

9

Whalin denied the plaintiff's motion for leave to file an amended complaint to add a claim for gross negligence. The motion was denied because the remedy of punitive damages typically sought in gross negligence claims is not available in subrogation cases, and amendment would therefore be futile because the claim would not survive a Rule 12(b)(6) motion to dismiss.

In its motion to reconsider, the plaintiff concedes that it is not seeking punitive damages but nonetheless argues that a claim for gross negligence would survive a motion to dismiss for failure to state a claim, because *actual* damages are available. The plaintiff asserts that the addition of a claim for gross negligence is important because waivers do not bar claims for gross negligence, and the addition of such a claim will be essential to its ability to recover in the event the waiver provision is held to apply to post-completion injuries.

A motion to reconsider is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). A Rule 59(e) motion may be granted where there is a clear error of law, newly discovered evidence, or an intervening change of law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court having determined that the waiver-of-subrogation provision does not apply to bar post-completion claims, the assertion of a claim for gross negligence is not essential to Royal's ability to maintain a cause of action against

Weis. However, the plaintiff is correct that actual damages may be awarded on a claim for gross negligence, *see Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App. - Beaumont 1986), and the court's earlier determination that a claim for gross negligence would not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was therefore a clear error of law. The court will therefore grant the plaintiff's motion for leave to amend. Accordingly,

**IT IS ORDERED** that the defendant Weis's Motion for Summary Judgment (DE 23) is **DENIED**; the third-party defendant QBP's Motion for Summary Judgment (DE 28) is **DENIED**; the third-party defendant Grinnell's Motion for Summary Judgment (DE 29) is **DENIED**; and the plaintiff's oral Motion for Summary Judgment is **GRANTED**, and it is **ADJUDGED** that the Waiver of Subrogation provision at section 11.2 of the Contract does not apply to claims regarding post-completion, post-payment damages.

**IT IS FURTHER ORDERED** that the plaintiff's motion to reconsider the court's January 11, 2006, order denying its motion for leave to file an amended complaint to assert a claim for gross negligence (DE 45) is **GRANTED**. The plaintiff's motion for leave to amend (DE 21) is **GRANTED**, and the amended complaint tendered therewith shall be deemed filed as of the date of entry of this order. The defendant and third-party defendants shall answer the amended complaint not later than 10 days from the date of entry of this order.

**IT IS FURTHER ORDERED** that the parties shall file a joint written status

report not later than 10 days after the entry of this order.  If the parties would like a telephonic conference or hearing prior to the entry of a scheduling order, such a request shall be included in the status report.


Signed on  April 3, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**